UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUTH PHEAKDEY PIN, | No. 2:15-cv-2450-EFB |
| Plaintiff, | |
| v. | ORDER |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for a period of disability and Disability Insurance Benefits ("DIB") under Titles II of the Social Security Act. The parties have filed cross-motions for summary judgment. For the reasons discussed below, plaintiff's motion for summary judgment is granted, the Commissioner's motion is denied, and the matter is remanded for further proceedings.

I.  BACKGROUND

Plaintiff filed an application for a period of disability and DIB, alleging that he had been disabled since April 6, 2012. Administrative Record ("AR") 151-160. His application was denied initially and upon reconsideration. *Id.* at 86-89, 91-96. On May 5, 2014, a hearing was held before administrative law judge ("ALJ") G. Ross Wheatley. *Id.* at 24-57. Plaintiff was represented by counsel at the hearing, at which he and a vocational expert testified. *Id.*

On June 5, 2014, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i) and 223(d) of the Act.[1] *Id*. at 9-19. The ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in Substantial Gainful Activity (SGA) since April 6, 2012, the Alleged Onset Date (20 CFR 404.1571 *et seq*.).

   * * *

/////

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

2

3. The claimant has the following severe impairments: Valley Fever – fatigue – weakness; left lung infection with shortness of breath; Hepatitis B; Fibromyalgia (20 CFR 404.1520(c)).

\* \* \*

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

\* \* \*

5. After careful consideration of the entire record, the undersigned finds that he claimant has the Residual Functional Capacity (RFC) to perform sedentary work as defined in 20 CFR 404.1567(a) with the following additional limitations: can occasionally climb ladders, ropes, or scaffolds; can frequently climb ramps or stairs; can frequently balance, stoop, crouch, kneel, or crawl; must avoid all exposure to irritants, such as fumes, odors, dust, and gases; must avoid all exposure to poorly ventilated areas; must avoid all use of hazardous machinery and all exposure to unprotected heights.

\* \* \*

6. The claimant is capable of performing Past Relevant Work (PRW) as a Cashier – Gambling or Teacher Aide II.  This work does not require the performance of work-related activities precluded by the claimant's Residual Functional Capacity (RFC) (20 CFR 404.1565).

\* \* \*

7. The claimant has not been under a disability, as defined in the Social Security Act, from April 6, 2012, through the date of this decision (20 CFR 404.1520(f)).

*Id.* at 11-19.

Plaintiff's request for Appeals Council review was denied on September 30, 2015, leaving the ALJ's decision as the final decision of the Commissioner.  *Id.* at 1-4.

II.   LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

III. ANALYSIS

Plaintiff argues that the ALJ erred in (1) failing to provide sufficient reasons for rejecting the opinion of his treating psychologist; (2) discrediting his subjective complaints absent clear and convincing reasons; and (3) failing to consider the side effects of his medication. ECF No. 15 at 10-18.

    A. The ALJ Properly Rejected Dr. Acolaste's Opinion

Plaintiff first contends that the ALJ erred by rejecting the opinion from her treating psychologist, Dr. Julia Darko Acolatse, Ph.D. ECF No. 15 at 10-14. The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Lester*, 81 F.3d at 834. Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining medical professional may be rejected for "specific

4

and legitimate" reasons that are supported by substantial evidence. *Id*. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

Plaintiff began receiving treatment from psychologist Dr. Juliet Acolatse, Ph.D., in January 2013. AR 252. In May 2014, Dr. Acolatse completed a Mental Disorder Questionnaires Form. *Id*. at 462-468. She diagnosed plaintiff with adjustment disorder with mixed anxiety and depression and post-traumatic stress disorder. *Id*. at 467. With regards to daily activities, Dr. Acolatse noted plaintiff's reports that he is able to take care of his activities of daily living, but with great effort due to pain, fatigue, and lack of motivation. *Id*. at 465. With regards to social function, she stated that plaintiff reported no pleasure in life, an inability to do anything due to lack of energy, difficulty sleeping, memory problems, and feeling irritable, withdrawn, and uncertain about how he would react to stress in the workplace. *Id*. at 465-466. Dr. Acolatse noted that plaintiff presented with chronic depression from childhood trauma and abuse, and that he "report[ed] more severe symptoms of depression and post-traumatic stress disorder with delayed onset that significantly impact his daily functioning." *Id*. at 466. As for any limitations regarding adaptation to work situations, Dr. Acolatse noted plaintiff's reports that chronic pain made him easily irritable and caused frequent anger outbursts. *Id*. at 466. Plaintiff also reported difficulty with short term memory and that he gets confused easily. *Id*.

In September 2012, plaintiff underwent a psychological evaluation, which was performed by examining licensed psychologist Dr. Davis Richwerger, Ed.D. *Id*. at 451-457. Plaintiff reported anger and short term memory problems, getting stressed easily, difficulty concentrating, and often feeling anxious or depressed. *Id*. at 451-452. At that time, plaintiff denied receiving psychiatric treatment or taking psychiatric medications. *Id*. at 452. On examination, plaintiff's

1    mannerisms were within normal limits; he was fully oriented to time, place, person and purpose
2    of evaluation; verbal responses were within normal limits and not delayed or diminished; and
3    thought process was clear and rational. *Id*. at 453. With regards to understanding instructions,
4    plaintiff's performance was consistent with a low level of effort throughout the evaluation and
5    was inconsistent with early aspects of his verbal behavior. *Id*. at 453-454. Plaintiff's affect and
6    emotional expression was somewhat dysphoric and dramatic, and he tended to give up quickly on
7    many tasks. *Id*. at 454. Dr. Richwerger concluded that results from the tests performed appeared
8    to be invalid and to be significant underestimates of plaintiff's actual abilities due to performance
9    consistent with low effort. *Id*. As a result, Dr. Richwerger could not provide an accurate
10   diagnosis or functional assessment. *Id*. at 456-457.

11   Two non-examining sources, Dr. Joshua D. Schwartz, Ph.D., and Dr. G. Johnson, M.D.,
12   reviewed plaintiff's medical records and both concluded that there was insufficient evidence to
13   assess plaintiff's mental functional limitations. *Id*. at 65-66, 79-80.

14   In assessing plaintiff's RFC, the ALJ gave "less weight" to Dr. Acolatse's opinion. As
15   noted, Drs. Richwerger, Schwartz, and Johnson did not provide any opinion regarding plaintiff's
16   functional limitations. This left Dr. Acolatse's opinion uncontradicted. Therefore it could be
17   rejected if based upon clear and convincing reasons supported by substantial evidence.[2] *Lester*,
18   81 F.3d at 831. As discussed below, the ALJ's rejection of Dr. Acolatse's opinion does not meet
19   that standard.

20   The ALJ found that Dr. Acolatse's treating opinion was "unsupported by the objective
21   Medical Evidence of Record." AR at 16. However, no explanation is provided for that
22   conclusion. This conclusory statement, without more, cannot constitute a clear and convincing
23   reason for rejecting the treating physician's opinion. An ALJ may satisfy his burden of providing
24   sufficient reasons for rejecting a medical opinion "by setting out a detailed and thorough
25   summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

---

[2] While the ALJ purported to give the opinion "less weight," it is clear that he rejected Dr. Acolatse's opinion as plaintiff's RFC does not include any mental functional limitations. *See* AR 13.

6

making findings." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir.1988). As explained by the Ninth Circuit:

> To say that medical opinions are not supported by sufficient objective findings does not achieve the level of specificity our prior cases have required even when the objective factors are listed seriatim. The ALJ must do more than offer his own conclusions. He must set forth his own interpretation and explain why he, rather than the doctors, are correct.

*Regenniter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999).

The ALJ failed to identify any records that were contrary to Dr. Acolaste's opinion or explain why the medical evidence of record did not support this treating doctor's opinion. Accordingly, the ALJ's conclusory statement does not constitute a clear and convincing reason for rejecting the uncontradicted treating opinion from Dr. Acolatse.

In the same vein, the ALJ concluded, without explanation, that Dr. Acolatse's opinion was unsupported by plaintiff's admitted daily activities. AR 16. Again, the ALJ failed to point to any particulars for why he reached this conclusion. He did not identify what activities performed by plaintiff that were inconsistent with Dr. Acolatse's opinion. In an earlier portion of the decision, the ALJ stated that plaintiff could bathe and dress himself, and sometimes he does dishes and other light household chores. *Id*. at 12. The ALJ, however, did not specify whether these particular activities are the ones that he found to be inconsistent with Dr. Acolatse's opinion, nor did he specify how these very limited activities are inconsistent with Dr. Acolatse's opinion.

Lastly, the ALJ rejected Dr. Acolatse's opinion because it appeared to be based on plaintiff's subjective complaints rather than objective medical evidence. *Id*. "An ALJ may reject a physician's opinion where it is premised primarily on plaintiff's subjective complaints and the ALJ properly discounted plaintiff's credibility." *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). With the exception of a few objective observations, the vast majority of statements provided by Dr. Acolatse were premised by either "patient reported" or "per patient's report." AR 462-466. But the impairments under treatment were psychological and the diagnosis and treatment necessarily dependent to some degree on plaintiff's statements. However, assuming that the record supports the ALJ's finding that Dr. Acolatse relied heavily on plaintiff's

7

subjective complaints, Dr. Acolatse's reliance on those complaints does not constitute a clear and convincing reasons because, as explained below, the ALJ failed to "properly discount[] plaintiff's credibility." *Tommasetti v. Astrue*, 533 F.3d at 1041.  Thus, the ALJ failed to provided legally sufficient reasons for rejecting Dr. Acolatse's opinion.

The ALJ's failure to provide a sufficient explanation for his treatment of Dr. Acolatse's opinion is troubling under the circumstances of this case.  The ALJ's written decision is devoid of any logical explanation for how the ALJ reached his conclusion that plaintiff has no mental limitations impacting his ability to work.  The ALJ rejected Dr. Acolatse's treating opinion and purported to give "significant weight" to Dr. Richwerger's opinion because it was "consistent with the longitudinal Medical Evidence of Record (MER) and with the claimant's admitted activities of daily living . . . ." *Id*. at 15-16.  As noted above, Dr. Richwerger did not provide an opinion regarding plaintiff's functional limitations because the test results from his examination of plaintiff were invalid.  Thus, there was no opinion to accord significant weight.  To add to the confusion, the ALJ goes on to state that he "determined additional limitations [than those assessed by Dr. Richwerger] are appropriate in light of the totality of the medical evidence of record and the claimant's subjective complaints." *Id*. at 16.  Again, Dr. Richwerger did not assess any limitations.  Moreover, despite finding that "additional limitations are appropriate," plaintiff's RFC does not include any mental functional limitations.

As far as the court can discern, the ALJ appeared to rely on non-examining physicians Dr. Schwarz and Dr. Johnson's conclusion that there was insufficient evidence to establish mental impairments.  In reaching their conclusion, both physicians noted that there was an absence of medication, treatment, or hospitalization to support a mental impairment. *Id*. at 65-66, 79.  The ALJ, while acknowledging that plaintiff was seeing a psychologist, similarly found that plaintiff "has received limited treatment, and is not currently receiving any mental health treatment or taking medication." *Id*. at 14.  This finding, however, is not supported by the record, which documents treatment for anxiety and depression.

In October 2012, plaintiff reported being angry and stressed, and weight loss and depression were noted.  AR 304, 206.  He was diagnosed with anxiety, state unspecified.  January

2013 treatment note indicates that plaintiff complained of depression and anxiety, and that he was prescribed Ativan. AR 312. He was diagnosed with depression and anxiety, state unspecified. *Id*. at 314. In March 2013, plaintiff complained of depression and difficulty sleeping. *Id*. at 315. He was diagnosed with major depressive disorder, unspecified, and anxiety, state unspecified, and again prescribed Ativan. *Id*. at 317. In May 2013, plaintiff was seen for anxiety. *Id*. at 268. He was diagnosed with major depressive disorder and anxiety, state unspecified, and prescribed Ativan and Trazodone. *Id*. at 268-270. A November 2013 treatment notes reflect that plaintiff's mood was depressed and no concentration to examination was noted. *Id*. at 278. His diagnosis included major depression disorder and anxiety, state unspecified, and his medications list again included Trazodone and Ativan. *Id*. Plaintiff was also seen in February 2014 for anxiety, weakness, and weight loss, and it was noted that plaintiff continued to take antidepressant and antianxiety medications. *Id*. at 459. Plaintiff also testified at the administrative hearing that he was taking trazodone for his depression. *Id*. at 38. This directly contradicts the ALJ finding that plaintiff was not receiving any mental treatment or medication.[3]

Based on the foregoing, the court finds that the ALJ erred by failing to provide legally sufficient reasons for rejecting Acolatse's opinion, and also by failing to adequately explain his finding that plaintiff had no mental impairments.

B.      Plaintiff's Creditability

Plaintiff next argues that the ALJ erred by failing to give clear and convincing reasons for rejecting his subjective complaints. ECF No. 15 at 14-16.

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of impairment, the ALJ may then consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. *See id*. at 345-347. The ALJ also may consider: (1) the

---

[3] Dr. Schwarz's conclusion that there was insufficient evidence to assess plaintiff's mental functional limitations is understandable, given that majority of medical evidence concerning plaintiff's mental health treatment were produced after October 30, 2012, the date Dr. Schwarz reviewed the record. *See* AR 65-66.

applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. *Smolen*, 80 F.3d at 1284. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, *see Quang Van Han v. Bowen*, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. *Marcia v. Sullivan*, 900 F.2d 172, 177 n. 6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Morgan*, 169 F.3d at 599.

At the administrative hearing, plaintiff testified that he suffers from Valley fever, which presented as an infection in his left lung. AR 35. He also stated that he suffers from anxiety and depression, which he attributed to several family members being executed in Cambodia prior to plaintiff moving to the United States. *Id*. at 35-36. He also indicated that he suffers from back, shoulder, knee, hip, and joint pain, but that his depression is his most significant impairment. *Id*. at 36. He stated that he was taking trazodone for his depression and that his physician recommended he undergo counseling, which he claimed he couldn't afford. *Id*. at 37-38. Plaintiff also stated he takes gabapentin, which helps with pain but causes him to feel dizzy and tired. *Id*. at 41.

Plaintiff further testified that on an average day his wife will wake him up to eat, he watches a little television, and then goes back to sleep. *Id*. at 42. He can shower and dress himself, but requires reminders from his wife. *Id*. He stated that he does not do any cooking, but is able to clean his own dish after a meal. *Id*. at 42-43. He also indicated that he did not read due

/////

to difficulty concentrating. *Id*. at 44.  He spends most of his time with his wife and five year old son, but occasionally a friend will come over and listen to music. *Id*. at 45-46.

The ALJ concluded that there were several factors that reduced plaintiff's credibility.  AR 13-14.  First, the ALJ found that plaintiff's allegations of severe impairments were inconsistent with his ability to "engage in a somewhat normal level of daily activity and interaction."  AR 14.  The ALJ elaborated that while plaintiff's "activities of daily living were somewhat limited, some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary to obtain and maintain employment and are inconsistent with the presence of an incapacitating or debilitating condition."  AR 14.  An ALJ may discredit a claimant's allegations of severe limitations or pain where that the claimant "is able to spend a substantial part of his day engaged in pursuits involving the performance of physical [or mental] functions that *are* transferable to a work setting . . . ."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (emphasis in original).  But "[t]he ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (quoting Burch, 400 F.3d at 681) (modification in original).

Here, none of the daily activities identified by the ALJ evidence a capability to engage in normal personal activities, much less demonstrate an ability to engage in work related tasks on a consistent basis.  The ALJ observed that plaintiff was able to bathe and dress himself, and that sometimes he did "the dishes and other light household chores."[4]  *Id*. at 14.  These limited activities do not demonstrate that plaintiff can perform work related activities on a sustained basis.  *See Garrison v. Colvin*, 759 F.3d 995, 1015-16 (9th Cir. 2014) ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely

---

[4] It's unclear what "other light household chores" the ALJ believed plaintiff could perform.  Plaintiff testified that he doesn't cook or take out the trash.  AR 43-44.  When asked if he helps out his wife around the house, the only task he said he could do was clean his dish after he finished eating a meal.  *Id*. at 43.

11

resting in bed all day," and holding that the ALJ erred in concluding that the plaintiff's reported daily activities, which "included talking on the phone, preparing meals, cleaning her room, and helping to care for her daughter," were inconsistent with her pain complaints); *Fair*, 885 F.2d 597, 603 (9th Cir. 1989) ("many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication").

The only other activities identified by the ALJ as demonstrating an ability to work were plaintiff's ability to take his son to the park and perform personal care without any problems. AR 14. Both findings, however, are based on mischaracterizations of evidence. At the administrative hearing, the ALJ asked plaintiff if he ever takes his son to the park. AR 46. Plaintiff's response was "Last week, I went, but I couldn't go. I stayed in the car because my wife took him. I would stay in the car."[5] AR 46. This testimony establishes little more than plaintiff's ability to sit in a car, and does not demonstrate an ability to perform work-related tasks.[6] To the contrary, it indicates that plaintiff was not capable of leaving the car and going to the park to engage in physical activity with his son. The ALJ also found that plaintiff has "no problem with personal care" based on third party functional report submitted by plaintiff's friend. *Id.* at 14. On the form, plaintiff's friend checked a box indicating that plaintiff has no problem with personal care. *Id.* at 207. However, directly below the box he explained that plaintiff needs to be reminded to bathe, take care of his hair, and to feed himself. *Id.* In another section of the form, the friend also reported that plaintiff needed help, encouragement, or reminders to go to sleep, bathe, change clothes, eat, and take his medication. *Id.* at 208. Thus, the ALJ's findings that plaintiff can care for his personal needs and take his son to the park are not supported by substantial evidence.

---

[5] While this response, viewed in isolation, could possibly be conceived as equivocal, English is plaintiff's second language and the response is consistent in form with other statements made by plaintiff at his administrative hearing.

[6] The mischaracterization of this evidence is particularly troubling given the ALJ's strong reliance on plaintiff's ability to take his child to the park as evidence that he is not disabled. The ALJ's decision references plaintiff's ability to take his son to the park no less than 5 times. *See generally* AR 9-19.

The ALJ also found that plaintiff's allegations regarding the severity of his impairments were not consistent with the objective medical evidence of record. AR 14. Specifically, the ALJ noted that plaintiff only received conservative treatment and that the objective medical findings "do not support more restrictive functional limitations than those assessed . . . ." *Id.* The ALJ, however, failed to identify specific medical records that were inconsistent with plaintiff's subjective complaint or evincing conservative treatment. Instead, the ALJ offered only his general conclusions, which are insufficient to support the adverse credibility finding. *See Lester*, 81 F.3d at 834 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.").

The ALJ did provide specific findings for his conclusion that plaintiff's complaints regarding depression were not fully credibility. However, none of the specific findings are supported by record. The ALJ noted, as he did in numerous other areas of the decision, that plaintiff "reported he is unable to work or play with his son, but also acknowledged that they had in fact gone to the park the previous week." As explained above, plaintiff testified that he stayed in the car while his wife and son played at the park. Thus, substantial evidence does not support the inconsistency relied on by the ALJ. Next, the ALJ noted that plaintiff had "seen a psychologist, but has received limited treatment, and is not currently receiving any mental health treatment or taking any medications." *Id.* As previously discussed, this finding is not supported by the medical evidence of record, which consistently documents plaintiff's complaints of depression and anxiety, which were treated with medication.

The ALJ also concluded that plaintiff was not fully credible because he received unemployment benefits during 2012 and 2013, and to be eligible for such benefits plaintiff was required to certify that he was physically and mentally able and willing to work. AR 11. The receipt of unemployment benefits is not necessarily inconsistent with disability under the Social Security Act, as suggested by the ALJ. *See Freeman v. Colvin*, 2014 WL 793148, at *2 n.1 (W.D. Wash. Feb. 26, 2014) (quoting an Appeals Council decision noting that a memorandum, dated August 9, 2010, from the Chief Administrative Law Judge "makes it clear that one's claim to be able to work doesn't contradict one's claim to be disabled under Social Security Rules.

1  Under our sequential evaluation process, one can be found able to perform some work, and still
2  be found disabled . . . . The Chief Administrative Law Judge's memorandum also states that
3  applications for unemployment benefits must be considered as part of the overall evidence of
4  record that is to support the ultimate determination.  While such an application cannot alone
5  disqualify one for disability benefits, as the hearing decision suggests, it is to be considered as
6  part of the sequential evaluation."); *Mulanax v. Comm'r Soc. Sec.*, 293 F. Appx 522, 523 (9th Cir.
7  2008) ("[R]eceipt of unemployment benefits does not by itself support a conclusion that
8  [plaintiff] is not credible."); *see also* Cal. Unemp. Ins. Code § 1253.8 ("An unemployed
9  individual shall not be disqualified for eligibility for unemployment compensation benefits solely
10  on the basis that he or she is only available for part-time work.").

11  The record does not establish that plaintiff's receipt of unemployment benefits was based
12  on plaintiff's representation that he could perform full time work. *See Carmickle v. Comm'r, Soc.*
13  *Sec. Admin.*, 533 F.3d 1155, 1161-62 ("[W]hile receipt of unemployment benefits can undermine
14  a claimant's alleged inability to work, the record here does not establish whether Carmickle held
15  himself out as available for full-time or part-time work.  Only the former is inconsistent with his
16  disability allegations.").  Accordingly, the ALJ's conclusory finding that the receipt of
17  unemployment benefits reduces plaintiff's credibility is not supported by substantial evidence.

18  Lastly, the ALJ also found that plaintiff's overall demeanor and appearance at the
19  administrative hearing was not consistent with the degree of his alleged limitations.   AR 13.
20  While an ALJ may consider his own observations at the hearing in assessing the plaintiff's
21  credibility, such observations cannot "form the sole basis for discrediting a person's testimony."
22  *Orn v. Astrue*, 495 F.3d 625, 640 (9th Cir. 2007).  As all other reasons provided by the ALJ are
23  deficient, the ALJ's own observations cannot support his adverse credibility finding.

24  C. Remand for Further Proceedings

25  "A district court may reverse the decision of the Commissioner of Social Security, with or
26  without remanding the cause for a rehearing, but the proper course, except in rare circumstances,
27  is to remand to the agency for additional investigation or explanation." *Dominguez v. Colvin*, 808
28  F.3d 406, 407 (9th Cir. 2015) (internal quotes and citations omitted). "Unless the district court

concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits." *Id*.

Here, the record indicates that the ALJ failed to adequately consider evidence concerning plaintiff's mental impairments. Accordingly, remand for further proceedings is appropriate to allow the ALJ to consider such evidence and make appropriate findings.

IV. <u>CONCLUSION</u>

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is granted;

2. The Commissioner's cross-motion for summary judgment is denied;

3. The matter is remanded for further proceedings consistent with this order; and

4. The Clerk is directed to enter judgment in plaintiff's favor.

DATED: March 28, 2017.

*[signature]*
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE